THE STATE, EX REL. BAILEY, APPELLEE, *v.* KEISE ET AL.,
INDUSTRIAL COMMISSION OF OHIO, APPELLANTS.

(No. 68-519—Decided June 18, 1969.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. James O. Seymour,* for appellee.

*Mr. Paul W. Brown,* attorney general, *Mr. Walter J. Howdyshell* and *Mr. James A. McLaughlin,* for appellants.

SCHNEIDER, J. This cause was submitted to the Court of Appeals upon the pleadings, in which the parties admitted that relator was entitled to compensation from the state insurance fund by reason of *Prendergast* v. *Indus. Comm.* (1940), 136 Ohio St. 535. Thus, we assume that the "employing industry and his [the employee's] relationship thereto are localized in Ohio" (136 Ohio St., at 543), even though relator neither resided nor was working in Ohio. *Prendergast* held that the state's interest in the employment relationship supports the right of an employee of an Ohio employer to compensation from the state fund

for an extraterritorial injury. However, respondents maintain that the specific safety requirements of the commission can have no extraterritorial application, and the violation thereof cannot give rise to an additional award from the state fund as permitted by Section 35, Article II of the Ohio Constitution.

Admittedly, our task here would have been less difficult if it had appeared (which it does not) that a written agreement had been executed by the employee and employer pursuant to Section 4123.54, Revised Code.[1] Nevertheless, we are constrained to hold that the state's interest

---

[1] Section 4123.54, Revised Code, reads as follows:

"Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not purposely self-inflicted, is entitled to receive, either directly from his employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, such compensation for loss sustained on account of such injury, occupational disease or death, and such medical, nurse, and hospital services and medicines, and such amount of funeral expenses in case of death, as are provided by sections 4123.01 to 4123.94, inclusive, of the Revised Code.

"Whenever, with respect to an employee of an employer who is subject to and has complied with sections 4123.01 to 4123.94, inclusive, of the Revised Code, there is possibility of conflict with respect to the application of workmen's compensation laws because the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, the employer and the employee may agree to be bound by the laws of this state or by the laws of some other state in which all or some portion of the work of the employee is to be performed. Such agreement shall be in writing and shall be filed with the industrial commission within ten days after it is executed and shall remain in force until terminated or modified by agreement of the parties similarly filed. If the agreement is to be bound by the laws of this state and the employer has complied with sections 4123.01 to 4123.94, inclusive, of the Revised Code, then the employee is entitled to compensation and benefits regardless of where the injury occurs or the disease is contracted and the rights of the employee and his dependents under the laws of this state shall be the exclusive remedy against the employer on account of injury, disease, or death in the course of and arising out of his employment. If the agreement is to be bound by the laws of another state and the employer has complied with the laws of that state, the

in the employment relationship between an Ohio employer and his employees furnishes an equally valid basis for an employee, as a consequence of that contract of hire, to receive an additional award from the state insurance fund if his extraterritorial injury was caused by his employer's violation of a specific safety requirement or order of the Industrial Commission.

Of course, the courts of no sovereignty will execute the penal laws of another (*The Antelope,* 23 U. S. [10 Wheat.] 66, 123, 6 L. Ed. 268), nor will they impose the criminal penalties of their own laws for extraterritorial acts. But it does not follow that the failure of a duty, created by the statutes of one state and attached to a relationship conceived in that state, may be excused merely because the failure occurred in another state. The Ohio safety requirements for places of employment in Iowa are not law in Iowa. However, they prescribe conduct which is imported to an Ohio contract of employment and give rise to a transitory duty to observe them, which follows the parties to the contract as an obligation thereof wherever they may go. See *Loucks* v. *Standard Oil Co.* (1918), 224 N. Y. 99, 120 N. E. 198.

---

rights of the employee and his dependents under the laws of that state shall be the exclusive remedy against the employer on account of injury, disease, or death in the course of and arising out of his employment without regard to the place where the injury was sustained or the disease contracted.

"If any employee or his dependents are awarded workmen's compensation benefits or recover damages from the employer under the laws of another state, the amount so awarded or recovered, whether paid or to be paid in future installments, shall be credited on the amount of any award of compensation or benefits made to the employee or his dependents by the industrial commission.

"If an employee is a resident of a state other than this state and is insured under the workmen's compensation law or similar laws of a state other than this state, such employee and his dependents are not entitled to receive compensation or benefits under sections 4123.01 to 4123.94, inclusive, of the Revised Code, on account of injury, disease, or death arising out of or in the course of employment while temporarily within this state and the rights of such employee and his dependents under the laws of such other state shall be the exclusive remedy against the employer on account of such injury, disease, or death."

Section 35, Article II of the Ohio Constitution* authorizes the General Assembly to establish a state fund to provide compensation to workmen and their dependents for injuries occasioned in the course of their employment. Once the General Assembly has so acted, Section 35 ordains further that when the injury of a claimant results from the failure of his employer to comply with any specific safety requirement for the protection of employees, there shall be added to the amount of compensation a sum "not greater than fifty nor less than fifteen per centum of the maximum award established by law . . . [to be] paid in like manner as other awards. . . ."

It would be grossly inconsistent to say that the state has sufficient interest in the welfare of an employee to provide for the payment of money for his injury occurring outside the state, and at the same time, to say that the state has insufficient interest in the welfare of the same employee to require the employer's adherence to conduct prescribed for the prevention of that very injury, regardless of where that conduct is to be observed. Nothing in the language of Section 35 of Article II of the Constitution limits compensation to injuries incurred within the state. Nor is the language of Section 35 imposing the added award, payable when the injury is caused by the failure to comply with a specific safety requirement, so limited.

A review of the history of Section 35 of Article II of the Constitution is illuminating. Under the original form of Section 35, as adopted in 1912[2] an employee, by receiv-

*Section 35, Article II of the Constitution of Ohio now reads:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. *Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.* Laws may be passed establishing a board which may be em-

ing an award for a compensable injury, was specifically not precluded from maintaining an action at law for his employer's failure to comply with lawful requirements for the protection of the lives, health and safety of employees. See *American Woodenware Mfg. Co.* v. *Schorling* (1917), 96 Ohio St. 305, 320, 117 N. E. 366; *Zajkowski* v. *American Steel & Wire Co.* (C. C. A. 6, 1918), 258 F. 9.

The amendment of 1923 abolished this right and substituted the additional award from the state insurance fund. Since that time, Section 35 of Article II has relieved

powered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all right of claimants thereto. *Such board shall set aside as a separate fund such proportion of the contributions paid by employers as in its judgment may be necessary, not to exceed one per centum thereof in any year, and so as to equalize, insofar as possible, the burden thereof, to be expended by such board in such manner as may be provided by law for the investigation and prevention of industrial accidents and diseases. Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees. When it is found, upon hearing, that an injury, disease or death resulted because of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of the compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards; and, if such compensation is paid from the state fund, the premium of such employer shall be increased in such amount, covering such period of time as may be fixed, as will recoup the state fund in the amount of such additional award, notwithstanding any and all other provisions in this constitution.*"

(Language added by the amendment adopted in 1923, effective January 1, 1924, emphasized. That amendment deleted the following language which appeared at the end of the first sentence in the original: ". . . and taking away any or all rights of action or defenses from employes and employers; but no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employees.")

employers from having to respond in damages for violations of specific safety requirements. In return, employees have relinquished their right to seek damages for those violations. Therefore, to construe Section 35 as relieving the employer of his common-law duty to respond in damages for a violation of a safety requirement causing injury to his employee, and simultaneously as preventing the injured employee from receiving an additional award of compensation for that default of his employer, would be manifestly illogical and unjust.

Section 4121.13, Revised Code, commands the Industrial Commission to prescribe means and methods of protecting the safety of "employees of *every* employment and *place of employment.*" (Emphasis added.) This language is not limited to places of employment located within Ohio. To the degree that it is applicable to places of employment without Ohio, it does not purport to extend extraterritorial effect to our Constitution, statutes or safety codes. Rather, its purport is to extend extraterritorial *protection* to employment relationships in which Ohio has a legitimate interest.

Respondents contend that to so interpret that language is to subject every Ohio employer doing business elsewhere to the risk of adherence to mutually inconsistent and conflicting regulations. Assuredly, Ohio will not sanction performance contrary to the law of the place of performance, but we are not confronted with that situation. The record contains no Iowa law or regulation governing the place of employment in question and no conflict with Iowa territorial law is before us. Therefore, we do not reach any federal constitutional question of the denial of full faith and credit to the public acts of Iowa. That issue might have arisen only if a territorial requirement had prescribed conduct which would have prevented compliance with conduct prescribed by Ohio for this employment.

Respondents argue that an additional award for a violation of Ohio specific safety requirements is in the nature of a penal law and that an Ohio specific safety requirement can, therefore, have no effect outside the territorial limits of Ohio. This court has previously stated that "the

additional award provided by Section 35, Article II of the Constitution of Ohio, for failure by an employer to comply with any specific safety requirement for the protecttion of his employees is compensation so far as the employee is concerned, but is in the nature of a penalty so far as such award affects the employer." *State, ex rel. Emmich,* v. *Indus. Comm.* (1947), 148 Ohio St. 658, 76 N. E. 2d 710, paragraph three of the syllabus.

Pertinent to this inquiry are the words of Judge Cardozo, uttered in a conflict-of-law case involving a statute which was penal in one sense and compensatory in another:

". . . [T]he question is not whether the statute is penal in some sense. The question is whether it is penal within the rules of private international law. A statute penal in that sense is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. . . . The purpose must be, not reparation to one aggrieved, but vindication of the public justice." *Loucks* v. *Standard Oil Co., supra* (224 N. Y. 99, 102).

We conclude that the primary characteristic of Ohio's additional award for a violation of a specific safety requirement is compensatory, not penal. And, to the extent that its penal characteristic affects the employer by requiring an increased premium to "recoup the state fund in the amount of such additional award" (Section 35, Article II of the Constitution), it will not prevent a specific safety requirement, the violation of which gives rise to it, from having extraterritorial effect.

*Judgment affirmed.*

O'Neill, Kerns and Duncan, JJ., concur.[*]
Taft, C. J., and Matthias, J., dissent.

Kerns, J., of the Second Appellate District, sitting for Herbert, J.

---

[*]This decision was made after the death of Justice Zimmerman and before the appointment of a successor.

TAFT, C. J., dissenting. Relator's claim for workmen's compensation was allowed pursuant to Chapter 4123, Revised Code.

The claim in the cause now before us is of a different nature. It is predicated upon the alleged failure of the employer to perform a duty imposed upon Ohio employers. This duty was stated in the form of a specific safety requirement promulgated by the Industrial Commission of Ohio pursuant to Section 4121.13, Revised Code. Unlike Chapter 4123 (see Section 4123.54, Revised Code), Chapter 4121 makes no provision for or reference to enforcement outside Ohio. It is clear from these statutory differences that the General Assembly never contemplated that the commission might extend its safety-requirements jurisdiction beyond the borders of this state.

The purpose of specific safety requirements is to improve working conditions in Ohio. To foster that policy, workplaces in Ohio falling below a stipulated standard are penalized. "The additional award is in the nature of a penalty, and it was the purpose of the Constitution to impose such penalty upon the employer who failed to comply * * *." *State, ex rel. Whitman,* v. *Indus. Comm.* (1936), 131 Ohio St. 375, 379, 3 N. E. 2d 52. The payment of the penalty amount to the employee is not because he was inadequately compensated by the original award but to encourage enforcement of safety requirements by private claims. Much the same theory may be observed to exist in the dual private (treble damage) and government enforcement of the federal anti-trust laws.

The safety requirements created by the Industrial Commission establish affirmative duties and may substantially affect the cost of performance of a contract. Iowa has the right to choose its own policies, which may be a choice to adopt no restrictions at all upon its places of employment.

The decision in the instant case presumes a superiority of judgment for Ohio legislators. Even the Industrial Commission itself rejects the mantle with which this court now cloaks it.

It is undisputed that the language of Section 4121.13,

Revised Code, which is quoted in the majority opinion, would apply Ohio's safety rules to workplaces in Ohio, even if the employer was not an Ohio corporation and the employees were hired outside this state. Similarly, Iowa and not Ohio should have the power to specify minimum standards for the work place involved in the cause now before us. The *only* reason offered for Ohio's "legitimate interest" in the "protection" of this Pennsylvania resident is that there was an "Ohio employer."

MATTHIAS, J., concurs in the foregoing dissenting opinion.