JOB, Appellee,

v.

CLEVELAND DANCE CENTER et al., Appellants.

[Cite as Job v. Cleveland Dance Ctr. (1989), 62 Ohio App.3d 678.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 55298, 55309.

Decided May 1, 1989.

*Christine Guarnieri* and *Louise Mosher,* for appellee.

*Arter & Hadden, Irene C. Keyes–Walker, Louis J. Licata* and *Jane P. Wilson,* for appellant Cleveland Dance Center.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Patrick H. Lewis,* Assistant Attorney General, for appellant Administrator, Bureau of Workers' Compensation.

JOHN F. CORRIGAN, Judge.

In case No. 55298, defendant-appellant, the Administrator of the Bureau of Workers' Compensation, appeals from a jury verdict which concluded that plaintiff-appellee Nicole Sowinski Job developed an unscheduled occupational disease in the course of her employment and is therefore entitled to participate in the Workers' Compensation Fund. Cleveland Dance Center, d.b.a. School of Cleveland Ballet (hereinafter "Cleveland Ballet"), appellee's employer, also appeals this verdict in a related appeal, case No. 55309. Pursuant to App.R. 3(B), both appeals were consolidated for briefing, hearing and disposition and, accordingly, appellants jointly assign six errors for review. As we find that the evidence adduced at trial does not support the jury's verdict, we reverse.

I

After learning that she suffers from osteoarthritis of the right hip, appellee, a principal teacher and co-director of the Cleveland Ballet, filed a claim for workers' compensation, contending that she had contracted an unscheduled occupational disease in the course of her employment. Appellee's claim was denied at the administrative levels and appellee subsequently brought this action for *de novo* review pursuant to R.C. 4123.519, naming the Administrator and the Cleveland Ballet as defendants.

The matter proceeded to a jury trial on January 18, 1988. Appellee testified on her own behalf and also presented the testimony of Dennis Nahat, Artistic Director of the Cleveland Ballet, and Dr. Garron G. Weiker, an orthopedic surgeon and renowned expert in the area of sports medicine.

Appellee, who was forty-five years old at the time of trial, testified that she began studying ballet when she was twelve years old, and began to dance professionally at age seventeen. Thereafter, appellee was a principal dancer with the Joffrey Ballet in New York for eighteen years and, later, danced as a principal dancer for various ballet companies throughout the world. After foot surgery in 1978, appellee stopped dancing professionally and became a teacher with the San Francisco Ballet. Appellee was hired by the Cleveland Ballet in 1982.

Appellee next testified to the physical rigors required of her as both a dancer and teacher. In particular, appellee described a movement called a turnout, or ninety-degree rotation of the leg which begins at the hip socket and forces the hip joint into an essentially unnatural outward movement. Appellee then stated that because the turnout is an essential move upon which eighty percent of classical ballet is based, she performed it hundreds of times per day and constantly strove to improve her rotation.

Appellee also testified that while teaching in San Francisco in 1978, she was treated for lower back sciatica which, she stated, manifested itself in a muscular ache in her lower back and groin area which extended to her right hip and down her right leg. Appellee further stated that in March 1983, she experienced pain which was similar to the pain she had experienced with the sciatica, but she additionally experienced pain in the socket of her right hip and in the bone itself. Appellee first saw Dr. Weiker for this problem in November 1983. Finally, appellee stated that while the pain associated with the sciatica has subsided, she continued to have a deep ache and stiffness in her right hip socket, and still sees Dr. Weiker for this problem.

Dennis Nahat, also an accomplished dancer, likewise testified that ballet is a physically demanding activity and, due to this fact, dancers typically end their careers in their thirties. Nahat also confirmed appellee's testimony that the turnout is an essential ballet movement which physically stresses the hips. Finally, Nahat testified that he has witnessed a deterioration in appellee's physical condition since 1985, and that appellee now limps and has difficulty in walking and sitting.

Lastly, Dr. Weiker testified for appellee. He stated that he is a physician with the Sports Medicine Clinic of the Cleveland Clinic and that this clinic treats the members of the Cleveland Browns, the Cleveland Indians, the Cleveland Cavaliers, and the Cleveland Ballet.

Weiker next indicated that he examined appellee in November 1983, for what she described as a progressively worsening pain in her right hip. Weiker stated that appellee told him that this pain began approximately three years earlier. Weiker further stated that X-rays of appellee's hip taken at the

time of this examination revealed degenerative osteoarthritis which was marked by lipping or osteophyte spurs around the edge of the joint. Weiker explained that this type of arthritis is progressive in nature, with cyst formation and lipping occurring as later symptoms. Thus, Weiker concluded with a reasonable degree of medical certainty that appellee had arthritis for several years before the 1983 examination. More specifically, Weiker stated that the disease probably had its onset in 1980, some two years before appellee came to Ohio.

With respect to causation, Weiker indicated that osteoarthritis is a degeneration or wearing out of the joints which can be expected in everyone as the result of aging. He noted, however, that it is generally accepted that aggressive use of the joints, as occurs with professional dancers, would cause bodily joints to wear out prematurely.

With respect to the characteristics of the disease, Weiker stated that typical symptoms include stiffness and pain, as well as a loss of motion, also the symptoms complained of by appellee. On cross-examination, Weiker admitted that the disease is not peculiar to dancers, and indeed, he stated that arthritis occurs even in sedentary people. Weiker further stated that unless one develops arthritis as the result of a specific injury, there are no predictable boundaries as to who will or will not develop the disease.

With respect to whether appellee's years of professional dance increased her risk of developing osteoarthritis in a greater degree and different manner than the public generally, Weiker would not categorically state as a medical fact that appellee's dancing produced her arthritis, because no medical study had, to date, proven a relationship between professional dancers and osteoarthritis. Weiker did state, however, that it was his impression, or feeling, that dancers do experience a higher rate of osteoarthritis of the hip than that experienced by the general public. He further stated that he believed that it was probable that appellee developed this disease because of the additional biomechanical stress of her hips caused by her occupation. On questioning by the court, Weiker stated that with a reasonable degree of medical certainty or probability, appellee's occupation proximately caused her arthritis.

Weiker admitted on cross-examination, however, that it is possible that appellee could have developed osteoarthritis of the hip even if she had never danced professionally, and also stated that appellee is the first ballet dancer he has ever treated for arthritis of the hip.

Defendants moved for a directed verdict at the close of appellee's case, contending that appellee had failed to prove that she developed a compensable occupational disease in the course of her employment with the Cleveland Ballet. The trial court denied the motion and the case was submitted to the

jury. Special interrogatories which addressed each element of appellee's cause of action were also submitted to the jury. Thereafter, the jury returned a general verdict granting appellee the right to participate in the Workers' Compensation Fund. In response to one of the special interrogatories, however, the jury concluded that osteoarthritis, by its causes and characteristics, and the conditions of appellee's employment, is not peculiar to appellee's employment. Thereafter, the trial court ordered further deliberations, and the jury subsequently returned with an affirmative response to this interrogatory.

Following trial, appellants jointly moved for judgment notwithstanding the verdict, asserting that osteoarthritis is not compensable pursuant to R.C. 4123.68(BB) (repealed in part, eff. Aug. 22, 1986 in Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718, 783), and that appellee had failed to prove all of the elements of her cause of action. This motion was denied, and appellants then commenced their appeals.

## II

In their first assignment of error, appellants contend that the trial court erred in denying the motion for a directed verdict which they made following appellee's trial counsel's opening statement. The grounds in support of that motion and this assignment of error are that in *Popham v. Indus. Comm.* (1966), 5 Ohio St.2d 85, 34 O.O.2d 187, 214 N.E.2d 80, the Supreme Court held that arthritis, or joint degeneration, results from ordinary bodily wear and tear and is not a compensable occupational disease. In light of Supreme Court pronouncements subsequent to *Popham v. Indus. Comm., supra,* we overrule this assignment of error.

Initially, we note with respect to procedure, that a trial court should exercise great caution in sustaining a motion for a directed verdict which is made following an opening statement; construing the statement in favor of the party against whom the motion is made, it must be clear that all of the facts expected to be proved, and those which have been stated, do not constitute a cause of action. *Brinkmoeller v. Wilson* (1975), 41 Ohio St.2d 223, 70 O.O.2d 424, 325 N.E.2d 233, syllabus.

With respect to the substantive law, we note that *Popham v. Indus. Comm., supra,* construes R.C. 4123.68(X), the 1959 version of the statute which authorizes compensation for unscheduled occupational diseases. We further note that this 1959 version of R.C. 4123.68(X) is identical to the 1979 version of R.C. 4123.68(BB) upon which appellee's claim is based. Cf. *Horvath v. Connor* (1983), 13 Ohio App.3d 214, 216, 13 OBR 264, 266, 468 N.E.2d 766, 768. Nonetheless, we are mindful of the fact that in 1975, the Supreme

Court set forth a tripartite test to be applied in order to determine whether an unscheduled occupational disease claim is compensable. See *State, ex rel. Ohio Bell Tel. Co., v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, syllabus. The elements which must be shown to establish entitlement to compensation are:

"(1) The disease is contracted in the course of employment;

"(2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and

"(3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally." *Id.*

In determining whether a particular claim is compensable under the foregoing, the court has subsequently explained that "claimants should be put to their proof in establishing the three criteria for 'other occupational diseases' contained in R.C. 4123.68(BB)." *State, ex rel. General Motors Corp., v. Indus. Comm.* (1975), 42 Ohio St.2d 255, 258, 71 O.O.2d 230, 232, 327 N.E.2d 761, 764. See, also, *Mull v. Jeep Corp.* (1983), 13 Ohio App.3d 426, 428, 13 OBR 514, 516, 469 N.E.2d 923, 925. *Allen v. Goodyear Aerospace* (1984), 13 Ohio App.3d 190, 191–192, 13 OBR 237, 238–239, 468 N.E.2d 779, 780–781; *Marino v. Suburban Motor Freight, Inc.* (Feb. 22, 1984), Summit App. No. 11291, unreported, 1984 WL 4772.

Accordingly, we find that the trial court properly overruled appellant's motion for a directed verdict made following appellee's counsel's opening statement, and properly permitted the presentation of evidence in support of the claim.

### III

For their second assignment of error, appellants contend that the trial court erred in denying their motions for a directed verdict which were made at the close of appellee's case, inasmuch as appellee failed to establish all of the essential elements of her cause of action. We find this assignment of error to be well taken and we reverse.

A motion for a directed verdict which is based upon the evidence presented is governed by Civ.R. 50(A), which provides as follows:

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one

conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." See, also, *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899.

Pursuant to this rule, a trial court must direct a verdict in favor of the defendant where there is no evidence tending to prove an essential element of the plaintiff's cause of action. *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463, 465, 3 OBR 544, 546, 445 N.E.2d 1167, 1169; *Epling v. Express Co.* (1977), 55 Ohio App.2d 59, 61, 9 O.O.3d 220, 221, 379 N.E.2d 239, 241.

The three essential elements of appellee's cause of action were set forth in *State, ex rel. Ohio Bell Tel. Co., v. Krise, supra.* As is indicated below, the evidence adduced at trial failed to meet all of these elements.

A. *"The disease is contracted in the course of employment."*

■ The term "contract" is not defined in the Revised Code; thus it is to be accorded its common meaning. R.C. 1.42. To contract is to "acquire." Webster's Third New International Dictionary (1986) 494. Accord *Robertson v. First Natl. Supermarkets, Inc.* (Oct. 1, 1987), Cuyahoga App. No. 52768, unreported, 1987 WL 17906.

Qualifying "employment" is likewise not defined in the Revised Code. This term has been judicially defined, however, as "work of the kind required in the business of *the employer* * * * [that is] in conformity with the established scheme or system of the business." (Emphasis added.) *State, ex rel. Bettman v. Christen* (1934), 128 Ohio St. 56, 190 N.E. 233, paragraph three of the syllabus. It is axiomatic that "the employer" is one which is subject to the Workers' Compensation Act of this state. R.C. 4123.54; *State, ex rel. Stanadyne, Inc. v. Indus. Comm.* (1984), 12 Ohio St.3d 199, 202, 12 OBR 264, 266, 466 N.E.2d 171, 174–175; *State ex rel. Bailey, v. Krise* (1969), 18 Ohio St.2d 191, 47 O.O.2d 432, 249 N.E.2d 55, paragraph two of the syllabus; *Prendergast v. Indus. Comm.* (1940), 136 Ohio St. 535, 538–539, 17 O.O. 190, 192, 27 N.E.2d 235, 238–239. Moreover, the employer must also be named in the action. R.C. 4123.519.

In light of the foregoing, we interpret the requirement that the disease be "contracted in the course of employment" to mandate that the claimant demonstrate that he acquired the disease through working with an employer who is subject to this state's Workers' Compensation Act and who has been properly joined in an action. Cf. *State ex rel. Burnett, v. Indus. Comm.* (1983), 6 Ohio St.3d 266, 268, 6 OBR 332, 333, 452 N.E.2d 1341, 1342–1343;

*State, ex rel. Republic Steel Corp., v. Indus. Comm.* (1980), 61 Ohio St.2d 193, 195, 15 O.O.3d 216, 217, 399 N.E.2d 1268, 1269.

 In this case, appellee's expert testimony indicated that she acquired osteoarthritis in 1980, yet appellee did not prove that she worked with an employer who was subject to this state's Workers' Compensation Act at that time. Moreover, appellee's proof demonstrated that she did not acquire this disease in the course of her employment with defendant-appellant, the Cleveland Ballet. Accordingly, we find that appellee failed to satisfy the first requisite element of recovery as set forth in *State, ex rel. Ohio Bell Tel. Co., v. Krise, supra,* and we reverse.

 To avoid this fatal flaw in her case, appellee urges us to apply the "last injurious exposure" rule to this case, because her expert testimony established that arthritis has an insidious onset. We note, however, that the General Assembly included "last injurious exposure" language only in the workers' compensation provisions which deal with certain scheduled diseases, see R.C. 4123.68(V) to 4123.68(AA) and those unscheduled diseases of the respiratory tract which result from injurious exposures from dust, R.C. 4123.68(BB) (now 4123.68). Thus, because the right to participate in the Workers' Compensation Fund is determined by statute, *Westenberger v. Indus. Comm.* (1939), 135 Ohio St. 211, 213, 14 O.O. 56, 57, 20 N.E.2d 252, 253, there is no basis for applying the last injurious exposure rule to this situation.

B. "The disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of employment result in a hazard which distinguishes the employment in character from employment generally."

To establish this element, the claimant must demonstrate that in his own daily work activities he was more apt than the general public to acquire the relevant unscheduled disease. *Patterson v. Connor* (1984), 19 Ohio App.3d 304, 306, 19 OBR 476, 478, 484 N.E.2d 240, 242.

Dr. Weiker's testimony that professional dance entails aggressive use of the joints which causes premature degeneration, as well as his opinion that there is a causal link between dance and osteoarthritis, was sufficient to establish this element.

C. "The employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."

Dr. Weiker, as we stated previously, did establish that professional dance creates a risk of contracting osteoarthritis in a greater degree than experienced by the general public. However, he did not state that dancers develop this disease in a different manner than do others. Rather, he stated, essen-

tially, that dancers experience an acceleration of the normal wearing out of their joints. Accordingly, we find that appellee failed to establish this requisite element of her cause of action.

In light of the foregoing, we find appellants' second assignment of error to be well taken.

## IV

Appellants next argue that the trial court erred in refusing to instruct the jury that appellee was required to prove that she contracted osteoarthritis in the course of her employment with the Cleveland Ballet, and in refusing to submit their written interrogatories to the jury, which would have required the jury to specifically determine this fact.

### A. *The Instruction*

Pursuant to Civ.R. 49(B), a trial court "shall give such explanation or instruction as may be necessary to enable the jury * * * to render a general verdict * * *." In this case, the record indicates that the trial court instructed the jury that appellee was required to prove that the disease arose out of "her employment." No specific employer was mentioned, even though there was no evidence to establish that appellee worked in Ohio at the time she contracted arthritis. Later, the jury sought further clarification as to whether appellee had to link the disease to the Cleveland Ballet, and the court essentially repeated its previous instruction verbatim.

Clearly, the jury was not given an answer to its question. In addition, the jury should have been instructed that appellee was required to establish that she contracted the disease with the Cleveland Ballet, in light of our discussion with respect to appellant's second assignment of error. Accordingly, we hold that the instruction did not meet the mandate of Civ.R. 49(B).

### B. *Appellants' Interrogatories*

The submission of proposed interrogatories is governed by Civ.R. 49(B), which provides in pertinent part:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."

Thus, pursuant to this rule,

"Following a timely request by a party, a mandatory duty arises to submit written interrogatories to the jury, provided they are in the form the court approves. The wording of Civ.R. 49(B), that the "court shall submit written interrogatories * * * upon request of any party," *is mandatory in character and leaves no discretion in the trial court on the question of submission, upon request, of proper interrogatories to the jury.* The rule, however, reposes discretion in the court to pass upon the *content* of requested interrogatories as they "shall be submitted to the jury in the form the court approves." ' (Emphasis added.) *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 298 [75 O.O.2d 331, 348 N.E.2d 135], citing *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161 [71 O.O.2d 164, 327 N.E.2d 645]." (Emphasis in original.) *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.* (1986), 28 Ohio St.3d 333, 336, 28 OBR 400, 402, 504 N.E.2d 415, 418.

■ In this case, the trial court wholly refused to submit appellants' proposed interrogatories. It did not merely alter their form or content. Thus, we conclude that the trial court failed to follow the mandate of Civ.R. 49(B).

Appellants' third assignment of error is sustained.

## V

For their fourth assignment of error, appellants contend that the trial court erroneously directed the jurors to conform the response to a written interrogatory to their general verdict, and erroneously failed to enter judgment for appellants when the jury returned a general verdict which was inconsistent with one of the answers to a written interrogatory. This assignment of error has merit.

■ Pursuant to Civ.R. 49(B), a trial court may return the jury for further consideration of its answers to interrogatories and its general verdict when the two are inconsistent. In this instance, the trial court should instruct the jury to further consider the case in order to reconcile the inconsistency. See *Wagner v. Rollercade II, Inc.* (1983), 11 Ohio App.3d 199, 200, 11 OBR 294, 295, 463 N.E.2d 1295, 1296; *Knitz v. Minster Machine Co.* (Feb. 9, 1987), Lucas App. No. L-84-125, unreported, 1987 WL 6486.

■ In this case, the trial court ordered further deliberations, instructing:

"THE COURT: Ladies and gentlemen, *the reason interrogatories are submitted to a Jury is to make sure that the specific answers to the factual questions are consistent with the verdict that was rendered in this case.* The answer to the interrogatories are not consistent with the verdict. Therefore, I am going to ask you to return to the Jury deliberation room and continue your deliberation." (Emphasis added.)

We conclude that this instruction did not inform the jury that it had to reconcile the conflict, but rather, directed the jury to simply alter its response to the interrogatories to be consistent with the verdict.

The assignment of error is well taken.

## VI

Appellants next claim that the trial court abused its discretion by allowing appellee to testify to the operations necessitated by her condition, by examining appellee's expert in the presence of the jury, and by communicating its bias to the jury. We will consider each contention in turn.

 As the extent of appellee's disability was not relevant to the trial, we conclude that it was erroneous for the court to permit this testimony. In light of the fact that the interrogatories necessarily focused the jury's consideration of the evidence only to relevant matters, however, this is harmless error.

 We further find that the trial court acted properly in interrogating Dr. Weiker in the presence of the jury because, in Weiker's effort to distinguish a legally significant causal relationship from a medically significant causal relationship, Weiker's testimony appeared equivocal. Thus, the trial court properly clarified the testimony by putting forth its own question of causation for the jury.

Finally, we find no evidence in the record of the bias alluded to by appellants, and for that reason we reject this contention.

Assignment of Error No. V is overruled.

## VII

Finally, appellants contend that the trial court erred in overruling their motion for judgment notwithstanding the verdict. In support of this motion, appellants asserted that (a) osteoarthritis is not compensable as a matter of law; (b) a proximate causal relationship was not proved; and (c) that appellee failed to establish that she contracted the disease in the course of employment with an employer who is subject to the state Workers' Compensation Act.

While grounds (a) and (b) were not sufficient to sustain the motion, as was set forth previously, we have determined that appellee failed to prove that she contracted a compensable occupational disease in the course of employment with an employer who is subject to this state's workers' compensation laws in accordance with R.C. 4123.54. See *State, ex rel. Stanadyne, Inc., v. Indus. Comm., supra; State, ex rel. Bailey, v. Krise, supra; Prendergast v. Indus.*

*Comm., supra.* Thus, given appellee's failure to prove an essential element of her case, the trial court should have entered judgment for defendants, notwithstanding the jury's verdict.

The judgment of the trial court is reversed.

*Judgment reversed.*

PATTON, P.J., and MATIA, J., concur.