PREJEAN, Appellee and Cross–Appellant,

v.

EUCLID BOARD OF EDUCATION et al., Appellants and Cross–Appellees.

[Cite as *Prejean v. Euclid Bd. of Edn.* (1997), 119 Ohio App.3d 793.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70905 to 70908.

Decided April 14, 1997.

*Frank Leonetti, Jr.; Gamiere & Associates, Dorothy S. Gamiere* and *Timothy H. Snyder,* for appellee and cross-appellant.

*Gamiere & Associates, Dorothy S. Gamiere* and *Timothy H. Snyder,* for appellee and cross-appellant.

*Squire, Sanders & Dempsey* and *William Michael Hanna,* for appellant and cross-appellee Euclid Board of Education.

*Robert J. Marek,* Assistant Attorney General, for appellant and cross-appellee Bureau of Workers' Compensation.

DAVID T. MATIA, Judge.

Euclid City School District ("school district") and the Administrator, Bureau of Workers' Compensation, appellants and cross-appellees, appeal from the judgment of the Cuyahoga County Court of Common Pleas, case Nos. CV–291444 and CV–291445, which allowed Jean Prejean, appellee and cross-appellant, to participate in the Workers' Compensation Fund for bilateral carpal tunnel syndrome, which developed while Prejean was employed as a bus driver for the school district. Prejean appeals from the judgment of the trial court, which did not allow him to participate in the Workers' Compensation Fund for an alleged injury to her right knee. The combined appeals present three assignments of error for this court's review.

Prejean was employed as a school bus driver by the Euclid Board of Education for approximately nine years. Approximately six years were spent operating school bus number 36, an RTA-type bus with a flat front end. From 1992 until she stopped working in 1994, Prejean drove a small passenger van. Her duties as a bus driver required her to use the air brakes numerous times each day. In addition, Prejean opened and closed the school bus doors approximately sixty times per day and operated various overhead switches incidental to operating a bus. Prejean maintained that, due to her occupational duties, she developed carpal tunnel syndrome in the course of her employment, which eventually required her to stop working. Prejean alleged further that, sometime in 1988, she injured her right knee while rising from her seat to assist the students. According to Prejean, this injury, for which she received workers' compensation benefits, never fully healed, eventually deteriorating to the point where she could no longer effectively operate a school bus.

Prejean filed workers' compensation claims for both conditions, claim No. ODPE13307 relating to the carpal tunnel syndrome and claim No. ODPE13519 relating to the alleged knee condition. Both claims were denied administratively, and Prejean appealed both to the Cuyahoga County Court of Common Pleas pursuant to R.C. 4123.512. Claim No. ODPE13307 was designated as case No. CV–291444 and claim No. ODPE13519 was designated as case No. CV–291445. Both cases were consolidated for purposes of trial under case No. 291444.

At trial, Prejean testified regarding her alleged injuries, as did a co-worker, Sandra Leonardi, who alleged that she had also developed carpal tunnel syndrome as a result of driving a school bus for the school district. In addition, Prejean offered the videotaped deposition testimony of Dr. Patrick Dennison and Dr. Mahesh Patel in her behalf. Each doctor testified as to the nature of Prejean's injuries and their possible relation to her occupation.

At the close of Prejean's case, the school district moved for a directed verdict pursuant to Civ.R. 50(A) as to both alleged conditions. The trial court reserved ruling on the motion.

During its case-in-chief, the school district offered the videotaped deposition of Dr. Kevin Trangle as evidence. Trangle concluded that Prejean's medical conditions did not arise out of the course of her employment.

At the conclusion of the case, the school district renewed its motion for a directed verdict pursuant to Civ.R. 50(A). The trial court overruled the motion. After closing arguments, the trial court issued several instructions to the jury. Prejean requested the following jury charge regarding the theory of dual causation:

"There may be more than one proximate cause of an injury or occupational disease. When workplace activities, conditions and risks combine with other causes to directly and proximately produce the injury or occupational disease, each is a proximate cause. It is not necessary that each cause occur at the same time or place. *Ohio Jury Instructions,* Section 365.13(5); *Norris v. Babcock & Wilcox, et al.,* 48 Ohio App.3d 66, 67, 548 N.E.2d 304 (1988)."

The trial court refused to give the complete instruction as requested but did instruct the jury as follows:

"Folks, there may be more than one proximate cause of an injury or occupational disease."

After deliberations, the jury returned a verdict in favor of Prejean, allowing her to participate in the Workers' Compensation Fund for bilateral carpal tunnel syndrome. However, the jury also returned a verdict against Prejean, finding that she could not participate in the Workers' Compensation Fund for her right knee condition.

On July 1, 1996, Prejean, the school district and the Administrator, Bureau of Workers' Compensation all filed separate notices of appeal from the judgment of the trial court. On July 16, 1996, this court *sua sponte* consolidated the separate appeals for purposes of briefing, hearing and disposition.

The school district's sole assignment of error states:

"The trial court erred in denying Euclid's motion for directed verdict in regards to Prejean's alleged bilateral carpal tunnel syndrome."

■ The school district argues, through its sole assignment of error, that the trial court incorrectly denied its motion for directed verdict pursuant to Civ.R. 50(A). Specifically, the school district maintains that Prejean failed to establish the three required elements for entitlement to workers' compensation for an occupational disease as set forth by this court in *Job v. Cleveland Dance Ctr.* (1989), 62 Ohio App.3d 678, 577 N.E.2d 396:

"(1) The disease is contracted in the course of employment;

"(2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and

"(3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally." *Id.* at 685, 577 N.E.2d at 401, citing *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, at syllabus.

It is the school district's position that, although Prejean introduced sufficient testimony to establish the first of the three necessary elements for participation in the Workers' Compensation Fund, she completely failed to establish the second and third elements, thereby requiring the trial court to enter a directed verdict pursuant to Civ.R. 50(A) in favor of the school district.

The school district's sole assignment of error is not well taken.

Civ.R. 50(A), which sets forth the grounds upon which a motion for directed verdict may be granted, states:

"(1) When made. A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence.

"(2) When not granted. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.

"(3) Grounds. A motion for a directed verdict shall state the specific grounds therefor.

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); *Crawford v. Halkovics* (1982), 1 Ohio St.3d 184, 1 OBR 213, 438 N.E.2d 890; *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027.

█ A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of his claim. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357, 360–361. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141, 141–142; *Vosgerichian v. Mancini Shah & Assoc.* (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, unreported, 1996 WL 86684.

█ In the case *sub judice,* a review of the record from the trial court demonstrates that the trial court properly denied the school district's motion for directed verdict, as sufficient evidence was adduced at trial on all the essential elements of Prejean's workers' compensation claim arising out of her alleged occupational disease, bilateral carpal tunnel syndrome. A review of the deposition testimony of Dr. Mahesh Patel and Dr. Patrick Dennison demonstrates that each doctor testified regarding all three elements necessary to prove a compensable claim for workers' compensation arising out of an occupational disease. Patel testified as follows:

"Q. Now, Doctor, based upon the history given to you by Ms. Prejean, the information you have received about her job duties as a bus driver for the Euclid Board of Education, the review of the diagnostic studies and tests which you conducted on behalf of Ms. Prejean or had referred for those examinations, your experience as a physician, have you formed an opinion or do you have an opinion as to whether or not her job activities as a Euclid Board of Education bus driver caused her to have a greater risk of contracting or contributing to carpal tunnel syndrome than the general public?

"A. Yes.

"Q. And what is that opinion?

"MR. HANNA: Objection.

"A. That her work activities as school bus driver definitely contributed and made her more at risk compared to the general public.

"Q. And why do you arrive at the opinion, Doctor?

"MR. HANNA: Objection.

"A. The work activities, constant flexion at the wrist joint, putting pressure on the steering wheel, repetitive motions and just her general work activities.

"Q. Doctor, based upon the history given to you by Ms. Prejean, the information you received from the history taken from her, the information received about her job duties as bus driver for the Euclid Board of Education, a review of the diagnostic tests and your examination of Ms. Prejean and your experience as a physician, do you have an opinion as to whether or not Ms. Prejean acquired her carpal tunnel syndrome as a result of the physical conditions imposed by the duties of her job with the Euclid Board of Education?

"A. Yes.

"Q. And what is that opinion?

"MR. HANNA: Objection.

"A. The carpal tunnel syndrome is caused by her duties and her work as a school bus driver."

Similarly, Dennison testified:

"Q. Now again, Doctor, based upon the history that Ms. Prejean gave to you and your examination to her hands and fingers and review of her diagnostic studies and the tests and in your general experience, do you have an opinion within a reasonable degree of medical certainty as to what caused the carpal tunnel syndrome from which Ms. Prejean suffers?

"MR. HANNA: Objection.

"Q. You can answer that yes, I have an opinion or no, I don't.

"A. Yes, I have an opinion.

"Q. And what is your opinion?

"MR. HANNA: Objection.

"A. A lot of upper extremity injuries, it is felt, including carpal tunnel, it is felt are the result of prolonged exposure to vibrational forces. Mainly vibrational forces, although other forces can be involved. Over a prolonged period, there is—obviously as a bus driver she would have exposed to prolonged vibrational forces. She would have been exposed to the jarring. She would have been

exposed to the locking mechanism on the bus door. She would have been exposed to the bouncing of the bus. All of these factors are consistent with that diagnosis.

"Q. In rendering that opinion, Doctor, have you studied the literature with reference to the relationship between vibration and carpal tunnel?

"MR. HANNA: Objection.

"A. I have studied that literature. I've gone over that literature. I have given a talk on this to a local company. And there is a strong association between vibrational forces and carpal tunnel syndrome."

Clearly, sufficient evidence was set forth by Prejean to survive the school district's motion for directed verdict. See *Conover v. Lake Cty. Metro Parks Sys.* (1996), 114 Ohio App.3d 570, 683 N.E.2d 808; *Upshaw v. Cent. Foundry Div., GMC* (1992), 82 Ohio App.3d 636, 639, 612 N.E.2d 1283, 1285; *Hoops v. Mayfield* (1990), 69 Ohio App.3d 604, 591 N.E.2d 323.

Accordingly, the school district's sole assignment of error is not well taken.

The Administrator's sole assignment of error states:

"The trial court committed prejudicial error in allowing in evidence, over objection, the testimony of plaintiff's coworker that the coworker contracted an occupational disease, carpal tunnel syndrome, from driving a school bus for defendant, Euclid City School District."

The Administrator argues through his only assignment of error that the trial court improperly allowed into evidence the testimony of Sandra Leonardi, a coworker of Prejean, who also drove a bus for the school district and developed carpal tunnel syndrome allegedly as a result of her employment. Specifically, Leonardi testified:

"Q. During the course of your—let me withdraw that. Are you currently suffering from any kind of illness or disease?

"A. Yes, I am.

"Q. What is your condition today?

"A. Occupational disease?

"Q. Yes, occupational disease. Do you have—

"MR. MAREK: Objection.

"THE COURT: Overruled.

"Q. Go ahead.

"A. Carpal tunnel, neck and lower back.

"Q. Have you filed a claim with the Bureau of Workers' Compensation for those injuries or occupational diseases?

"A. Yes, I have.

"Q. And is Dorothy Gamier and myself your lawyer?

"A. Yes, you are.

"Q. During the—prior to your employment with the Euclid Board of Education, what was the condition of your health?

"A. Fine.

"Q. Did you have anything wrong with you?

"A. No, I did not.

"Q. Are you currently a diabetic?

"A. No, I'm not.

"Q. Do you smoke cigarettes?

"A. Yes, I do.

"Q. How often do you smoke?

"A. Everyday.

"Q. How much do you smoke? How many packs a day?

"A. About a pack.

"Q. How long have you smoked a pack a day?

"A. Oh, a long time."

It is the position of the Administrator that Leonardi was not competent as a witness to testify that she has the occupational disease of carpal tunnel syndrome as a result of operating a school bus for the school district and the admission of Leonardi's testimony was both irrelevant and prejudicial to the Administrator's case.

The Administrator's sole assignment of error is not well taken.

It is well settled that the admission of evidence falls under the general standard of relevancy set forth in Evid.R. 401, which states:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ However, pursuant to Evid.R. 403, relevant evidence must be excluded if its probative value is substantially outweighed by the threat of unfair prejudice. In Ohio, this determination is within the sound discretion of the trial court. *State*

*v. Jackson* (1993), 86 Ohio App.3d 568, 621 N.E.2d 710; *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154. Absent a showing of an abuse of discretion, a reviewing court will not interfere with the decision of the trial court. *State v. Rutledge* (Sept. 27, 1994), Franklin App. No. 93APAO8-1212, unreported, 1994 WL 530323.

In *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140, the Ohio Supreme Court stated:

"The term 'abuse of discretion' was defined by this court in *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149:

■ " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore,* 5 Ohio St.3d at 219, 5 OBR at 482–483, 450 N.E.2d at 1142.

■■ In the case *sub judice,* a review of the record demonstrates that the trial court did not abuse its discretion by allowing the limited testimony of Sandra Leonardi, Prejean's co-worker, into evidence. In *Miller v. Barry* (1992), 81 Ohio App.3d 393, 611 N.E.2d 357, the Franklin County Court of Appeals found that, in certain circumstances, a co-worker's testimony regarding the physical demands of a particular job is admissible in an action to recover workers' compensation benefits for an occupational disease even in the absence of medical testimony that the co-worker suffered from such disease where the testimony in question aided the jury in understanding the particular job duties at issue and to rebut the employer's claim that the duties were not strenuous in nature. In addition, Leonardi's testimony was admissible pursuant to Evid.R. 701, opinion testimony by a lay witness, since she was testifying regarding matters rationally based upon the perception of Leonardi, specifically her own medical condition and her occupational duties as a bus driver.

Accordingly, the trial court did not err in allowing the disputed testimony. The Administrator's sole assignment of error is not well taken.

Prejean's sole assignment of error states:

"The trial court committed error by failing to fully and properly charge the jury on the issue of dual causation, as requested by the appellant, in a workers' compensation case when the pleadings and proofs at trial indicated that more than one cause could be determined by reasonable minds. This error caused prejudice to the appellant and caused a failure of substantial justice by presenting a jury charge on causation in a manner which is contrary to the protections afforded by the workers' compensation statute and relevant case law."

Prejean maintains that the trial court erred in failing to give a complete jury instruction on the issue of dual causation as it relates to the alleged occupational injury to her right knee. Specifically, she argues that, since the underlying medical testimony of Patel, Dennison and Trangle offered conflicting reasons for the deteriorating knee condition, the trial court was required to instruct the jury as to dual causation.

Initially, the school district maintains that Prejean failed to preserve her objection on appeal pursuant to Civ.R. 51(A). The school district maintains further that, assuming the objection was preserved for the record, insufficient evidence was set forth to warrant the requested dual causation jury instruction. Lastly, the school district argues that the trial court's actual instruction on dual causation was sufficient for the purpose of informing the jury that there could be more than one proximate cause for the medical conditions at issue.

For the following reasons, Prejean's sole assignment of error is not well taken.

A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585. It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence. *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170–171.

In Ohio, it is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135. However, requested instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. However, the trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles. *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 690, 591 N.E.2d 762, 769–770.

When reviewing such an assignment of error, the review court cannot view a single challenged jury instruction piecemeal or in isolation but must review it within the context of the entire charge. *State v. Hardy* (1971), 28 Ohio St.2d 89, 57 O.O.2d 284, 276 N.E.2d 247; *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772; *State v. Wise* (Jan. 29, 1993), Wood App. No. 91 WC 113, unreported, 1993 WL 18908. Accordingly, the proper standard of review for an appellate court is whether the trial court's refusal to give a defendant's requested

instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149; *Blakemore,* 5 Ohio St.3d at 219, 5 OBR at 482–483, 450 N.E.2d at 1141–1142.

In this case, a review of the record reveals the following exchange between the trial court and Prejean's counsel:

"THE COURT: The record didn't show when I asked counsel if there was anything to add or subtract from the charge, counsel for the plaintiff handed me what is denominated as instruction number 7. This was objected to my giving it by counsel for the defendant. What I did, I refused to give the—except that I did tell the jury the—I read the jury the first sentence which was there may be more than one proximate cause of an occupational disease. So the plaintiff then excepts to my failing to give—

"MR. LEONETTI: I do, you[r] Honor."

Civ.R. 51(A) provides:

"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

In *Baranyai v. Werner* (May 9, 1985), Cuyahoga App. No. 48921, unreported, this court found that Civ.R. 51(A) "does not require formality: rather, its purpose is to inform the trial judge of his possible errors so that he may have a chance to correct them." *Id.,* citing *Martin v. New Orleans* (C.A.5, 1982), 678 F.2d 1321, 1325. Applying the holding in *Baranyai* to the facts of the instant case, it is apparent that the trial court understood Prejean's argument and rejected it. Therefore, Prejean did comply with the mandates of Civ.R. 51(A), and her assignment of error is properly before this court.

Prejean contends that the trial court erred in failing to read her requested jury instruction on dual causation in its entirety to the jury. The trial court, rather than read the requested charge, stated:

"Folks, there may be more than one proximate cause of an injury or occupational disease."

Prior to this instruction, the trial court instructed the jury on proximate cause:

"I'm repeating, an occupational disease arises out of an employment which is directly or proximately caused by something incurred as part of the activities, conditions or risks of the work place.

"So what's the obligation of the plaintiff to prove by a preponderance of the evidence that the bilateral carpal tunnel syndrome and the right knee injury directly and proximately caused by her employment and her work with the defendant, Euclid Board of Education.

"Plaintiff is not entitled to benefits for any condition resulting from natural or other causes not related to employment, or from the disability caused by natural and deterioration of a tissue or organ or part of the body."

Viewing the disputed jury instruction in the context of the entire charge, it is clear that the trial court included the substance of the proposed instruction in its charge to the jury. *Echols v. Vernick* (June 11, 1987), Cuyahoga App. No. 52101, unreported, 1987 WL 12603. Therefore, Prejean has failed to demonstrate that she was prejudiced by the trial court's refusal to give her requested instruction on dual causation. *Wilson v. Dixon* (Mar. 29, 1990), Cuyahoga App. No. 56788, unreported, 1990 WL 37398; *Bedford Hts. v. Nathanson* (July 25, 1996), Cuyahoga App. No. 69937, 1996 WL 417145.

Prejean's sole assignment of error is not well taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

PATRICIA ANN BLACKMON, P.J., and O'DONNELL, J., concur.