OPINION
Plaintiff-appellant/cross-appellee, Linda S. Raniolo (Raniolo), timely appeals a decision rendered by the Mahoning County Court of Common Pleas, whereby the trial court granted judgment in favor of Raniolo against defendants-appellees/cross-appellants, Edward J. DeBartolo Corp. (DeBartolo) and Thomas Poynter (Poynter)[1], in the amount of $36,166.00.
On July 7, 1994, Raniolo went grocery shopping at Giant Eagle on State Route 224 in Boardman. After leaving the Giant Eagle store, she headed west on State Route 224. Raniolo was traveling in the curb lane.
Raniolo crossed the intersection of State Route 224 and West Boulevard, and was intending to make a right hand turn into Plaza Donuts. The driveway to Plaza Donuts is approximately 100 feet from the intersection of West Boulevard and State Route 224. The driveway to Plaza Donuts is located at an upward incline from State Route 224. Raniolo activated her right turning signal, slowed to make the turn, and began the turn into Plaza Donuts.
At approximately the same time that Raniolo was making her turn, Poynter, an employee of DeBartolo, was driving a pick-up truck owned by DeBartolo. Poynter was on his way to perform landscaping duties at the residence of Denise DeBartolo as part of his duties with DeBartolo.
Poynter was also traveling in a westerly direction in the curb lane. Poynter came through the intersection of State Route 224 and West Boulevard at approximately 40 miles per hour. The speed limit on State Route 224 is 40 miles per hour.
When Poynter first viewed Raniolo's vehicle, it was the only car in front of him and was approximately two car lengths ahead of him. As Raniolo slowed to make the turn into Plaza Donuts, Poynter slammed on his brakes and turned the truck to the right, which caused the truck to travel up over the curb and onto an embankment in front of Pizza Hut, a business adjoining the driveway to Plaza Donuts. Poynter and DeBartolo's truck struck Raniolo's vehicle on the right rear side.
At the time Poynter and DeBartolo's vehicle struck Raniolo's vehicle, Raniolo had her head turned towards the right. Raniolo was forcibly thrown forward. Her knees struck the dashboard, and her chest hit the steering wheel. Raniolo's head and neck were thrown forward over the steering wheel and then snapped backwards.
Following the accident, Raniolo did not experience any immediate pain, and so advised the investigating police officer. Raniolo declined an offer of medical treatment extended by a representative of DeBartolo who had been summoned to the scene by Poynter. Raniolo sought to return home to care for her children.
After returning home from the accident, Raniolo began to feel pain in her neck and lower back. Raniolo soon sought out medical treatment. On July 12, 1994, Raniolo was examined at the Mahoning Valley Chiropractic and Rehabilitation Center. Her treating chiropractor was Dr. David DeSantis.
Raniolo complained of chest and knee pain, and additional pain in the neck and lower back. Dr. DeSantis diagnosed Raniolo with a cervical strain and sprain, thoracic strain and sprain, lumbar strain and sprain, and contusions to the knees. X-rays of Raniolo showed no fractures or dislocations, but the x-rays showed a straightening of the lordotic curve of the neck, which had been caused by muscle spasms.
Raniolo began a course of treatment consisting of electrical stimulation, heat, and manipulation and massage. Raniolo found these treatments to be painful. In fact, quite often she would be in more pain after the treatments. Raniolo quit attending her physical therapy sessions, but did agree to begin a series of home exercises. Raniolo's lower back condition improved with the treatment. However, her neck pain had not improved as Dr. DeSantis had hoped for. Dr. DeSantis then referred Raniolo to Brian J. Brocker, M.D., a board-certified neurosurgeon.
Dr. Brocker examined Raniolo on August 25, 1994, approximately 7 weeks after the accident. Dr. Broker's examination consisted of tests similar to those performed at the Mahoning Valley Chiropractic Rehabilitation Center. Dr. Brocker's examination also revealed pain in relation to motion of the neck in addition to muscle spasms in the neck. Dr. Brocker diagnosed Raniolo with a cervical strain and sprain.
Dr. Brocker prescribed a regimen of treatment consisting of medication and exercise. The medication consisted of painkillers and muscle relaxants. The medication made Raniolo groggy and she took it when the pain was extreme. Her condition did not improve.
During the early stages of her treatment, in September of 1994, Raniolo informed Dr. Brocker that her left arm would go numb while she was holding her three-year-old son. Dr. Brocker testified that this numbness was a possible symptom of a bulging/herniating disc.
On June 30, 1995, Dr. Brocker performed a MRI examination on Raniolo. The MRI revealed a herniated disc in her neck at the C5-6 level on the left side toward the back of her spine. Dr. Brocker diagnosed Raniolo with a C5-6 herniated disc and a left C6 pinched nerve. Dr. Broker opined that there was a direct causal relationship between the car accident of July 7, 1994 and Raniolo's herniated disc.
Dr. Brocker's treatment of Raniolo remained conservative. Raniolo and Dr. Brocker discussed the prospect of interior cervical disectomy and fusion surgery to possibly repair Raniolo's herniated disc. Dr. Brocker disclosed the risks associated with the surgery to Raniolo. These risks included a 10-15% chance of non-improvement, paralysis, and damage to the nerve root. Raniolo decided that she would try to live with the pain.
Raniolo continued to experience severe headaches and neck pain. In November 1995, Dr. Brocker sent Raniolo to the Cleveland Clinic for a second opinion. The treating physician believed that Raniolo's pain was associated with muscle spasms, and recommended a biofeedback course of treatment. However, Raniolo did not partake in this course of treatment.
In July 1996, Raniolo returned to work at Gorant's Candy. Raniolo's job responsibilities included persistent bending over, feeding candy onto a belt, lifting boxes of varying weight, and dumping candy onto trays. The parties presented conflicting testimony as to the weight of these boxes. Although Raniolo admitted to sharing in some heavy lifting of boxes, she also testified that she knew the weight of the things she lifted and took precautions when lifting boxes and other materials. Raniolo failed to advise her treating physician that her job responsibilities might include lifting heavy objects.
Despite hopes to the contrary, Raniolo's condition did not improve. On September 29, 1997, Raniolo had surgery on her neck at North Side Hospital. Dr. Brocker performed an interior cervical disectomy and fusion to repair the C5 and C6 discs.
The surgery required Dr. Brocker to cut an incision into the front of Raniolo's neck. Dr. Brocker then drilled out the disc between C5 and C6 and fused the two vertebrae together with a piece of bone. The surgery, of necessity, required an incision in the front of Raniolo's neck, and left Raniolo with a permanent, disfiguring, and discoloring scar 5 centimeters in length and 5 millimeters in width on the front of her neck. Raniolo testified that she would receive comments concerning the appearance of the scar on her neck, and that such comments had the effect of making her conscious and uncomfortable about the scar. Raniolo received one such comment concerning the scar asking, "who slit your throat?" T.R. at 355.
The surgery did not totally relieve Raniolo's pain. Raniolo could no longer perform her duties at Gorant Candy; she took another job at a pottery shop. Raniolo worked as an assembly line finisher, wiping pottery as it came off of the presses.
On April 28, 1998, Raniolo received another MRI. This MRI revealed a herniated disc at the C6-7 level.
Raniolo filed her complaint in the Mahoning County Court of Common Pleas alleging one count of negligence against Poynter and DeBartolo Corp, and one count of subrogation against State Farm Insurance Company (State Farm). State Farm also filed a cross-claim against Poynter alleging one count of subrogation for the medical bills resulting from the accident that State Farm had paid on behalf of Raniolo. The parties entered into a stipulation agreement whereby all of the parties involved stipulated as to State Farm's subrogation claim of $5,000.00.
On October 17, 1997, Raniolo filed a motion for partial summary judgment against Poynter and DeBartolo on the issue of negligence. The trial court granted Raniolo's partial motion for summary judgment holding that Raniolo was entitled to judgment as a matter of law on the issue of negligence.
Defendant-appellee/third-party plaintiff Ohio Department of Human Services (ODHS) also filed a cross-claim against Poynter and DeBartolo pursuant to R.C. 5101.58.
A damages trial was held in the Mahoning County Court of Common Pleas on August 24, 1998. On August 28, 1998 the jury awarded a verdict to Raniolo in the amount of $36,166.00. The interrogatories submitted to the jury broke down the award as follows:
Past Medical Expenses $19,866.00
Lost Wages $3,000.00
Past Pain and Suffering $8,000.00
Past Disability $2,650.00
Future Medical Expenses $0
Future Pain and Suffering $0
Future Disability $2,650.00
Disfigurement $0________
$36,166.00
Following the jury's verdict, on September 8, 1998, Raniolo motioned for a new trial, or alternatively, additur. On September 25, 1998 a stipulated entry by all of the parties was filed and time stamped stating:
 "1.Plaintiff received injuries in an auto accident on July 7, 1994.
 "2. As a result of the injuries, the Ohio Department of Human Services paid for medical treatment provided to Plaintiff.
 "3. The Department has a right of subrogation pursuant to O.R.C. § 5101.58.
 "4. If the jury answers the interrogatory regarding the surgery of September 29, 1997 in the affirmative, the Department is entitled to judgment in the amount of $15,582.41.
 "5. If the jury answers the interrogatory in the negative, the Department is entitled to judgment in the amount of $799.90."
On February 4, 1999, the trial court entered a judgment entry in favor of Raniolo stating:
 "It is the Order of this Court that the language in paragraph 4 of the stipulated entry, time stamped September 25, 1998, clearly indicated that the Department of Human Services is entitled to a judgment in the amount of $15,582.41 as against Edward DeBartolo Corporation."
Said entry also overruled Raniolo's motion for a new trial.
Raniolo filed this timely notice of appeal on February 12, 1999. On February 24, 1999, DeBartolo filed a timely notice of cross-appeal.
Raniolo's first assignment of error states:
 "THE JURY'S VERDICT FINDING APPELLANT'S DAMAGES TO BE IN THE AMOUNT OF $36,166.00 WAS INADEQUATE, RESULTING FROM PASSION AND PREJUDICE, WAS CONTRARY TO LAW AND AGAINST THE WEIGHT OF THE EVIDENCE."
Raniolo's third assignment of error states:
 "THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE TESTIMONY ABOUT PREVIOUS WORK-RELATED INJURIES OF APPELLANT, WHICH WORK-RELATED INJURIES WERE NOT TO THE SAME PARTS OF THE BODY WHICH APPELLANT CLAIMED WERE INJURED IN THE ACCIDENT OF JULY 7, 1994."
Because Raniolo's first and third assignments of error involve a common issue of law and analysis, they will be discussed together.
Raniolo argues that the jury's verdict, finding damages in the amount of $36,166.00, constitutes an inadequate verdict resulting from the jury's passion and prejudice. Raniolo argues that jury's verdict was inadequate to compensate her for the injuries that she sustained.
Raniolo also argues that the jury acted under a passion or prejudice ignoring uncontroverted evidence of future pain and suffering, disfigurement, and future medical bills. The jury awarded no damages in these categories. Raniolo argues that the failure on the part of the jury to compensate Raniolo for these uncontroverted categories of damages constituted an error of law. In addition, Raniolo also argues that the jury's award for past pain and suffering, past disability, and future disability was inadequate as a matter of law to compensate Raniolo for the harm resulting from Poynter and DeBartolo's negligence.
Raniolo cites several cases in support of her arguments. Raniolo relies on Rowland v. Samshall (1964), 4 Ohio App.2d 349 and Spicer v. ArmcoSteel Corp. (1974), 68 O.O.2d 314, for the proposition that where the inadequacy of the verdict is so gross as to shock the sense of fairness and justice, and the verdict appears to have been given under the influence of passion or prejudice, the judgment entered on such verdict may be set aside and a new trial granted. Raniolo contends that a thorough review of the record illustrates that such a verdict is present and resulted from the admission of incompetent evidence.
"The purpose of a civil trial is to fully compensate the injured party for his losses." Miller v. Iwrin (1988), 49 Ohio App.3d 96, 98. The fundamental rule of the law of damages is that an injured party should be compensated for all injuries sustained. Fantozzi v. Sandusky CementProd. (1992), 64 Ohio St.3d 601, 612.
With these guiding principles in mind, however:
 "[T]he assessment of damages is thoroughly and peculiarly within the province of the jury which heard the testimony and appraised the witnesses as the incidents giving rise to the injury unfolded before it, and that such appraisal should not be disturbed, either upward or downward, unless `their judgment appears to have been the result of passion and prejudice * * *' Toledo, Columbus, and Ohio River Railroad Co. v. Miller, 108 Ohio State 388, 402, or is such as to shock the sense of fairness and justice of the reviewing court." (Emphasis added.) Spicer, 68 O.O.2d at 315.
For the purpose of review, the reviewing court will review a trial court's denial of a motion for new trial based upon an argument that the jury's verdict was the product of passion or prejudice under an abuse of discretion standard. Pena v. Northeast Ohio Emergency Affiliates (1995),108 Ohio App.3d 96, 104. An abuse of discretion will be found when the court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217 . Mere size of verdict is insufficient to prove passion or prejudice so as to warrant granting a new trial based on excessive or inadequate damages. Pena,108 Ohio App.3d at 104 citing Jeanne v. Hawkes Hosp. of Mt. Carmel (1991),74 Ohio App.3d 246, 257.
In reviewing whether a trial court abused its discretion in ruling on a motion for a new trial pursuant to Civ.R. 59(A)(4), an appellate court "must consider (1) the amount of the verdict, and (2) whether the jury considered improper evidence, improper argument by counsel, or other inappropriate conduct which had an influence on the jury." (Emphasis added.) Pena, 108 Ohio App.3d at 104 citing Dillon v. Bundy (1992),72 Ohio App.3d 767, 774; Sheets v. Norfolk Southern Corp. (1996),109 Ohio App.3d 278.
Civ.R. 59 provides in relevant part:
"(A) Grounds
 "A new trial may be granted to all or any of the parties on all or part of the issues upon any of the following grounds:
"* * *
 "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice[.]"
Raniolo claims that the facts clearly demonstrate that the trial court abused its discretion by failing to grant a new trial on account that the verdict was tainted by passion or prejudice. Raniolo claims to have satisfied the requisite prongs of the passion or prejudice test. First, Raniolo argues that when one compares her injuries suffered to the miniscule damages awarded, the smallness of the verdict clearly becomes an issue, and satisfies the first prong as set forth in Pena. Second, Raniolo also contests that the minimal amount of damages was induced by incompetent evidence.
In applying the facts of the instant case, Raniolo has failed to show that the jury's verdict was a result of passion or prejudice. A thorough examination of the record by the court illustrates that Raniolo has failed to satisfy the passion or prejudice test as set forth in Pena.
In order to support a finding of passion or prejudice, Raniolo must demonstrate to the reviewing court that the jury's assessment of damages was so disproportionate as "to shock the sense of fairness and justice of the reviewing court." Spicer, 68 O.O.2d at 315. A review of the evidence and testimony presented at trial illustrates that the jury's assessment of damages reflects testimony and evidence in the record.
As previously noted, the mere size of verdict is insufficient to prove passion or prejudice so as to warrant granting a new trial based on excessive or inadequate damages. Pena, 108 Ohio App.3d at 104. Ohio law requires that one who is injured by a tort attempt to mitigate their damages. Dunn v. Maxey (1997), 118 Ohio App.3d 665, 668. "However, therule requiring a person injured by the wrongful act or omission ofanother to minimize his [her] damages does not require a party to do whatis unreasonable." (Emphasis added.) Id.
With this in mind, as DeBartolo points out, given the evidence and testimony in the case the jury could have very well concluded that Raniolo failed to take reasonable steps to mitigate her damages. The testimony on record indicates that on cross-examination Raniolo admitted to having re-injured herself while playing basketball with her children, and as a result, had to go back to see her physician, and be put on medication again.
There was also testimony on record that Raniolo refused treatment such as conservative physiotherapy, and failed to relate to her doctor the nature and type of work she would be returning to. Raniolo's job included the possibility that she would be forced to lift boxes and objects. Both sides presented contradicting testimony as to the weight of the boxes that Raniolo was required to lift in the course of her employment. Raniolo's physician testified that Raniolo's lifting and carrying of heavy objects could worsen her pain and condition, create a strain, was contrary to conservative treatment, and against her treating physician's advice.
The conflicting testimony of Raniolo's injuries and Raniolo's failure to mitigate damages created an issue of fact and credibility to be determined by the jury. Evaluation as to the weight of the evidence and credibility of witnesses are issues for the jury's determination. Kalainv. Smith (1986), 25 Ohio St.3d 157, 162. "The appellate court must be guided by a presumption of correctness and cannot substitute its judgment for that of the trial court on findings of fact that are supported by some evidence." Dunn, 118 Ohio App.3d at 671, citing Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80-81.
Given the conflicting nature of the evidence, the jury could have resolved the issues of damages and issues as to the credibility of the witnesses in favor of DeBartolo. As noted by this court:
 "When there exist two fairly reasonable views of the evidence, we may not choose which view we prefer. Instead, we must accede to the jury, which `is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" (Emphasis added.) State v. Gore (1999) 131 Ohio App.3d 197, 201
quoting Seasons Coal Co., Inc., 10 Ohio St. at 80.
Although Raniolo may have received what she considered to be inadequate damages, "the damages award here may be low, * * * [but she] has failed to demonstrate that the trial court's damage award is so inadequate as to `shock the conscience.'" Hitch v. Ohio Dept. Mental Health (1996),114 Ohio App.3d 229, 247.
Even if Raniolo had met the first prong of the Pena test, Raniolo has failed to establish the second prong of the Pena test. Specifically, Raniolo has failed to show that the jury's verdict was induced or influenced by the admission of incompetent or inadmissible evidence. This is also the basis for Raniolo's third assignment of error.
Raniolo contests that the trial court abused its discretion by allowing DeBartolo to bring evidence of Raniolo's prior work-related injuries in front of the jury. Raniolo relies on Tonti v. Morrison (1971),29 Ohio App.2d 273, for the proposition that it is prejudicial error to admit evidence of previous work-related accidents which are unrelated to those injuries at issue in a personal injury lawsuit.
However, as DeBartolo points out, Tonti is distinguishable from the facts herein. In Tonti, the court examined a series of guidelines pertaining to the admissibility of prior injuries or accidents in a personal injury action. The court noted:
 "Most of the cases in which the question has been raised have held or recognized that the plaintiff may be cross-examined as to his previous injuries * * * for injuries similar to that constituting the basis of the present action, for the purpose of showing that his present physical condition is not the result of the injury presently sued for * * *" Id. at 275, quoting 69 A.L.R. 2d 593, 596.
From the aforementioned passage, it is clear that the court intended to limit the admissibility of prior injuries as substantive evidence to those instances where the prior injuries could be shown to be relative to the present injuries.
It is clear that in the present proceedings, DeBartolo intended to use the prior Workers' Compensation claims not as substantive evidence dealing with bodily injuries, but rather solely for impeachment purposes. DeBartolo issued a set of interrogatories to Raniolo. Interrogatory Number 8 provided:
 "Question 8: If you have ever applied for Workers' Compensation, list: (A) each Workers' Compensation claim; (B) identify the body part or disease contracted for each Workers' Compensation claim; (C) the physician who treated and examined you as a result of each injury." (Emphasis added.) T.R. at 308-309.
Raniolo originally answered "no" to these questions. However during opening statements, DeBartolo stated that they might call a witness from the Bureau of Workers' Compensation. Soon after, Raniolo notified her attorney that she had in fact applied for Workers' Compensation three times in the past, but had never been placed on temporary total disability for Workers' Compensation. Raniolo then supplemented the response to her interrogatories to reflect these answers.
As the trial court correctly noted: "[T]he issue here is not whether or not those claims come into evidence. The issue here is whether or not she misrepresented herself under oath on an interrogatory * * *." Clearly, this was an issue of a prior inconsistent statement by a witness that went to the ultimate issue of the truthfulness or untruthfulness of the testimony by the witness.
In addition, DeBartolo never questioned Raniolo as to the nature of the previous Workers' Compensation injuries. In fact, Raniolo's counsel elicited the only questions regarding the substantive nature of the prior Workers' Compensation claims. The trial court committed no error by allowing DeBartolo to cross-examine Raniolo as to the issue of truthfulness in her testimony.
Raniolo next claims to have satisfied the second prong of the Pena test by asserting that the jury's verdict was influenced by the admission of incompetent evidence in the form of lay opinion testimony provided by Officer Chambers. Raniolo contends that trial court abused its discretion by permitting Officer Chambers, who did not testify as an expert witness in this matter, to testify that Poynter was not traveling at a high rate of speed, but rather was traveling forty miles per hour.
A review of the transcript illustrates that the trial court did not abuse its discretion in permitting Officer Chambers to testify. The record indicates that Officer Chambers was not testifying as to his opinion of the rate of speed at which Poynter was traveling, but rather, Officer Chambers was stating what he had been told by Poynter.
At trial on direct examination Officer Chambers provided the following testimony:
 "Q Okay. Were you able through the course of your investigation to determine how fast the truck had been traveling?
"A No.
 "Q Okay. Were you able to determine if it was a high rate of speed versus a low rate of speed?
"* * *
 "A If I can determine a speed limit? I would say it was not a high rate of speed." T.R. at 455.
Officer Chambers also testified on cross-examination:
"Q All right. What's the speed limit in the area?
"A Forty miles an hour.
 "Q Okay. And did you ask Mr. Poynter how fast he was traveling?
"A Yes, I did.
"Q And what did Mr. Poynter tell you?
"A The speed limit.
"Q Forty miles an hour?
"A He said the speed limit. Id. at 459-60.
The foregoing testimony elicited from Officer Chambers shows that Officer Chambers was not giving his opinion as to the speed at which Poynter was traveling, but rather, Officer Chambers was simply restating what Poynter had told him. At most, his testimony indicated that he felt forty miles an hour was not a high rate of speed.
Even if the officer's testimony was improper opinion, the testimony adds no additional impact to the issues in the case. Had Officer Chambers' testimony not been admitted the jury still had Poynter's testimony that he was traveling at 40 mph. In addition the jury would still have viewed the same conflicting issues regarding Raniolo's injuries, re-injuries, and failure to mitigate damages.
Finally, Raniolo claims to have satisfied the second prong of the Pena
test, by asserting that the jury's verdict was influenced by the trial court's erroneous instruction to the jury as to the mitigation of damages. Raniolo argues that the trial court abused its discretion in instructing the jury as to Raniolo's duty to mitigate damages. Raniolo argues that the mitigation instruction was erroneous as nothing in the record showed that Raniolo breached any duty to use reasonable efforts to lessen her injuries.
A trial court should confine its instructions to the jury as to issues raised by the pleadings and the evidence. Prejan v. Euclid Bd. of Edn.
(1997), 119 Ohio App.3d 793, 804; Becker v. Lake Cty. Mem. Hosp. West
(1990), 53 Ohio State 3d 202, 208. In Ohio, it is a well-established principle that the trial court will not instruct the jury where there is no evidence to support an issue. Prejan, 119 Ohio App.3d at 804; Rileyv. Cincinnati (1976), 46 Ohio St.2d 287. Accordingly, the proper standard of review for an appellate court is whether the trial court's instruction to the jury constituted an abuse of discretion under the facts and circumstances of the case.
Applying the facts of the instant case, it is clear that the trial court properly instructed the jury as to the issue on mitigation of damages. As previously noted, Ohio law requires that one who is injured by a tort attempt to mitigate their damages. Dunn,118 Ohio App.3d at 668. As previously discussed in detail, the record contains contradictory evidence as to whether or not Raniolo properly mitigated her damages. Evidence presented at trial indicated that Raniolo had "re-injured" herself, had refused conservative treatment, and had failed to advise her physician as to the type of work she would be returning to. A review of the record shows that there was evidence on the record to support the trial court's instruction to the jury as to the issue of mitigation of damages.
Accordingly, Raniolo's first and third assignments of error are without merit.
Raniolo's second assignment of error states:
 "THE TRIAL COURT ERRED IN DENYING APPELLANTS'S MOTION FOR A NEW TRIAL, OR, ALTERNATIVELY, AN ADDITUR, AS THE AWARD OF DAMAGES TO APPELLANT WAS INADEQUATE, APPEARING TO HAVE BEEN GIVEN UNDER THE INFLUENCE OF PASSION OR PREJUDICE, WAS CONTRARY TO LAW AND AGAINST THE WEIGHT OF THE EVIDENCE."
In addition to challenging the adequacy of the verdict for passion and prejudice, Raniolo also alleges in her second assignment of error that the trial court abused its discretion in failing to grant Raniolo's motion for a new trial, or in the alternative, additur. Raniolo argues that the verdict is contrary to the weight of the evidence, and that the jury failed to include all the items of damage making up Raniolo's claim. Raniolo relies on a number of cases, Baum v. Augenstein (1983),10 Ohio App.3d 106 and Pena v. Northeast Ohio Emergency Afilliates
(1995), 108 Ohio App.3d 96, 104, in support of the proposition that a new trial is warranted where it appears from the record that the jury failed to consider an element of damages raised by uncontroverted expert testimony or evidence.
Raniolo argues that the trial court abused its discretion in not granting a new trial because the jury ignored an uncontroverted item of damages. Raniolo argues that the jury failed to award damages to surgically repair a scar on her throat that had proximately resulted from Poynter and DeBartolo's negligence. Raniolo asserts that her plastic surgeon gave uncontroverted testimony as to the cost of the surgery to repair the scar. Raniolo directs the court's attention to Spicer v. ArmcoSteel Corp. (1974), 68 O.O.2d 314, for the proposition that failure to award damages for a surgical scar is one of the considerations in the granting of a new trial on the basis of inadequate damages. Raniolo also cites to Baum, supra, and Pena, supra, in support of her arguments.
DeBartolo responds to Raniolo's argument by contending that the trial court did not abuse its discretion when denying Raniolo's motion. DeBartolo contends the award of damages was adequate, was not given under the influence of passion or prejudice, and followed the law and evidence. Therefore DeBartolo claims that the trial court acted within its discretion in denying Raniolo's motion for a new trial.
DeBartolo contests that the facts of the present case are clearly distinguishable from those set forth in Spicer. Specifically, DeBartolo asserts that in Spicer, the plaintiff elicited testimony to the effect that plaintiff's scar required plastic surgery. However, in the case at hand, DeBartolo notes that Raniolo's expert testified that there was no medical necessity for surgery on the scar. DeBartolo further notes that in the present case there was no sensory or motor deficit associated with the scar. In addition, DeBartolo argues that the jury viewed the scar first-hand but did not believe that it necessitated surgery.
Under the facts of the instant case, the trial court abused its discretion in failing to grant Raniolo additur, as the jury clearly failed to consider, or ignored, a proper uncontroverted element of damages in the form of the cost to surgically repair Raniolo's scar. The jury's verdict clearly indicates that the auto accident of July 7, 1994 proximately resulted in Raniolo's surgery for fusion of the C5-6 discs in Raniolo's neck. This surgery also resulted in a visible scar to the front of Raniolo's neck.
It is well established that in order for a person to be entitled to recover damages for a claimed negligent injury, the act complained of must be the direct and proximate cause of the injury. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 286-87. In Strother, the Ohio Supreme Court examined the issue of proximate cause and noted:
 "The term `proximate cause' is often difficult of exact definition as applied to the facts of a particular case. However, it is generally true that, where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act united with the original act to cause injury does not relieve the initial offender from liability." (Emphasis added.) Id. at 287 quoting Clinger v. Duncan (1957), 166 Ohio St. 217.
One is thus liable for the natural and probable consequences of his negligent acts. Id. at 287.
Clearly, the scar from the vertebrate fusion proximately resulted from the negligence of Poynter and DeBartolo. As previously noted, the jury determined that the fusion surgery was proximately caused by Poynter and DeBartolo's negligence. Raniolo would not have the noticeable scar from surgery, if not but for the negligence of Poynter and DeBartolo.Strother, 67 Ohio St.2d at 287. Poynter and DeBartolo are liable for the natural and probable consequences of their actions.
An injured party should be compensated for all injuries sustained. Raniolo's expert, Dr. Buckley, testified as to the extent of Raniolo's scar:
 "[A]ny scar, whether it be repaired by a plastic surgeon or a neurosurgeon essentially any time you cut the skin, you will have a permanent scar. The goal is to try and put the incisions in the lines of the distention so that the scars are not very visible. That, however is something that cannot be done on this type of procedure, because you must gain access to a certain area of the neck.
"* * *
"The scar could be improved with surgery.
"* * *
 "Well, essentially with her scar again the five centimeters horizontally is exactly what you would expect from an anterior cervical fusion procedure. The five millimeters in width is essentially acceptable after that procedure.
"* * *
 "To improve the appearance of the scar, the surgery would be necessary." (Emphasis added.) T.R. at 189-91.
Dr. Buckley further stated that he could perform the surgery for roughly $3,000.
In addition to Dr. Buckley's testimony, Raniolo also testified and described the nature of the scar and the impact that it has had on her life. Raniolo noted her original trepidation concerning the scar and the vertebrate fusion surgery:
"Q What did you think about having the surgery?
 "A I didn't like it. I really didn't want it. I didn't want the scar on me, you know, but if it had to be done, it had to be done." (Id. at 344-45).
Raniolo testified further as to her feelings about scar:
"Q How do you feel about the scar?
 "A I'm not happy about it. I get a lot of comments; you know, what happened to me, like, you know a kid started at work there, and he asked me, you know, who slit your throat. How would you feel?
"Q Are you conscious of it?
"A Yes, I am sometimes.
"Q Do you put makeup on it?
"A Sometimes.
"Q Would you like to have it fixed?
"A Yes." (Emphasis added.) (Id. at 355).
As the record shows, Raniolo clearly desires to have the scar surgically repaired. Raniolo introduced uncontroverted expert testimony that the surgery was necessary to improve the appearance of the scar. The jury clearly disregarded or ignored this element of damages.
Pursuant to App.R. 12(C), this court has the authority to "render judgment or final order that the trial court should have rendered on that evidence." The trial court improperly ignored an uncontroverted element of damages in the form of the cost of surgical repair to the scar on Raniolo's neck. Raniolo's expert testified that the total costs to have the scar surgically repaired would cost approximately $3,000. This figure includes the surgical fee, the facility fee, and a general anesthesia fee. As the trial court should have rendered judgment for Raniolo in the amount of $3,000, this court renders judgment for Raniolo in the amount of $3,000 pursuant to its authority under App.R.12(C).
Raniolo's second assignment of error is with merit.
DeBartolo's sole assignment of error states:
 "THE TRIAL COURT ERRED IN MIS-INTERPRETING A STIPULATION THAT OHIO DEPARTMENT OF HUMAN SERVICES IS ENTITLED TO A JUDGMENT AGAINST THE EDWARD J. DEBARTOLO CORPORATION, IN THE AMOUNT OF $15,582.41, SEPARATE FROM THE AWARD BY THE JURY TO LINDA S. RANIOLO, CAUSING THE EDWARD DEBARTOLO CORPORATION TO SUFFER A DOUBLE PENALTY IN THIS MATTER."
DeBartolo argues that the trial court erred in misinterpreting a stipulation agreement whereby the trial court ruled that ODHS was entitled to a judgment against DeBartolo in the amount of $15,582.41. DeBartolo contends that forcing DeBartolo to pay the stipulation agreement of $15,582.41 in addition to the $36,166.00 verdict in favor Raniolo, forces DeBartolo to suffer a double penalty.
In response to DeBartolo's argument, Raniolo and ODHS contend that the trial court did not err in interpreting the stipulation agreement. Raniolo and ODHS argue that the stipulation agreement clearly contemplates that if Interrogatory B, stating that Raniolo's September 29, 1997 surgery was proximately caused by the negligence of Poynter and DeBartolo, was answered in the affirmative, then DeBartolo would be forced to pay ODHS's subrogation claim. Raniolo and ODHS assert that to construe the stipulation agreement otherwise would result in a manifest injustice.
For purpose of review, the court will review a stipulation agreement in the same light as it would a settlement agreement. The courts have on occasion treated settlement agreements and stipulations in a similar manner. See Spercel v. Sterling Industries Inc. (1972), 31 Ohio St.2d 36
(A settlement agreement or a stipulation voluntarily entered into cannot be repudiated by either party); see also Moform Tool Corp. v. KecoIndustries Inc. (1971), 30 Ohio App.2d 207.
A settlement agreement is a contract. Continental W. Condominium UnitOwners Assn. v. Howard E. Ferguson Inc. (1996), 74 Ohio St.3d 501, 502. If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio (1984),15 Ohio St.3d 321, 322. If the contract language is capable of two reasonable but conflicting interpretations, however, there is an issue of fact as to the parties' intent. Id. An appellate court should not substitute its judgment for that of the trial court where there is competent and credible evidence supporting the trial court's finding.Seasons Coal Co., 10 Ohio St.3d at 80.
An examination of the stipulation agreement illustrates that the language is not clear and unambiguous. The contract language is capable of two reasonable interpretations. The language at issue in the stipulation agreement states:
 "3.The Department has a right of subrogation pursuant to O.R.C § 5101.58.
 "4. If the jury answers the interrogatory regarding the surgery on September 29, 1997 in the affirmative, the Department is entitled to a judgment in the amount of $15,582.41." (Document 124)
The language in the stipulation agreement fails to specify which party ODHS is exercising its right of subrogation against, Raniolo or DeBartolo. In a judgment entry filed February 4, 1999, the trial court found that the language contained in paragraph 4 of the stipulation entry "clearly indicates that the Department of Human Services is entitled to a judgment in the amount $15,582.41 as against Edward DeBartolo Corporation."
After a thorough review of the record, we find that there is competent and credible evidence to support the trial court's finding. While the language in the stipulation agreement may not "clearly indicate" that the stipulation agreement is enforceable against DeBartolo, a thorough examination of the evidence shows that that the stipulation agreement is enforceable against DeBartolo, and such enforcement does not amount to a double penalty against DeBartolo.
An examination of the record shows that Raniolo incurred uncontroverted medical bills amounting to roughly $35,000. These bills are further broken down into the following approximate amounts:
1. Dr. David DeSantis $3,731.00
 2. Dr. Brian Brocker (Pre 2/18/98 expenses) $13,546.00
3. Cleveland Clinic $1,417.00
 4. Dr. Brian Brocker (Post 2/18/98 expenses) $1,200.00
 5. Dr. John Beckley $ 65.00
_______________ Total $19,959.00
This foregoing figure of roughly $19,959 represents the amount ofmedical bills that Raniolo incurred outside of the September 29, 1997vertebrate fusion surgery. Raniolo personally incurred these expenses and ODHS made no payments for these charges. The jury awarded past medical expenses to Raniolo in the amount of $19,866.00. Clearly this component of damages was awarded as compensation for those past medical charges personally incurred by Raniolo.
In addition to the foregoing bills, Raniolo also underwent additionalmedical treatment that was not included in the foregoing charges. On September 29, 1997, Raniolo underwent surgery for an interior cervical disectomy and fusion to repair the C5 and C6 discs. The resulting charges for this procedure totaled roughly $15,900 and were paid by ODHS.
The parties entered into a stipulation agreement whereby ODHS would be entitled to a subrogation interest in the amount of $15,582.41 if the jury determined that the Raniolo's September 29, 1997 vertebrate fusion surgery proximately resulted from DeBartolo's negligence. The jury determined that Debartolo's negligence proximately resulted in Raniolo's September 29, 1997 surgery.
To accept DeBartolo's argument that ODHS's subrogation interest should be paid out of the jury's award would be equivalent to ignoring the facts and evidence presented at trial. The total medical expenses incurred by Raniolo totaled roughly $35,000. These medical bills are uncontroverted and all proximately resulted from DeBartolo's negligence. The jury awarded Raniolo a total $36,166.00, which was broken down as follows:
Past Medical Expenses $19,866.00
Lost Wages $3,000.00
Past Pain and Suffering $8,000.00
Past Disability $2,650.00
Future Medical Expenses $0
Future Pain and Suffering $0
Future Disability $2,650.00
 Disfigurement $0________
$36,166.00
The damage figure awarded for past medical expenses ($19,866.00) reflects the amount of medical expenses incurred which Raniolo personally incurred, $19,814.00. This damage figure does not include the approximate$15,000, which ODHS paid out for Raniolo's September 27, 1997 vertebratefusion surgery. To read the jury's verdict to include ODHS's subrogation interest would create an irrational and unjust result. Raniolo produceduncontroverted evidence of medical bills totaling roughly $35,000. To force Raniolo to pay ODHS's $15,000 subrogation fee out of her jury award of $36,166 would ignore and essentially reduce the jury's $16,300 award for lost wages, past pain and suffering, past disability, and future disability to approximately $2,300.
Additional evidence also supports the trial court's determination that OHDS was entitled to its subrogation interest against DeBartolo. Aspreviously noted ODHS paid out money for Raniolo's surgery, and alsoasserted a cross-claim against DeBartolo to protect its subrogationinterest. "[T]he State of Ohio is entitled to recover the amount expended for said medical services and care from the Defendant." (Document 82). ODHS made no such claim against Raniolo. Raniolo requested a separate verdict form for the jury to make an award to ODHS however, the trial court rejected this request stating that the interrogatory and stipulation entry would cover ODHS's interest.
In addition, DeBartolo's concerns over the imposition of a double penalty are also misplaced. The evidence introduced at trial shows that DeBartolo stands to suffer no double penalty by being forced to pay ODHS's subrogation claim. Raniolo incurred roughly $35,000 in uncontroverted medical bills, which proximately resulted from the DeBartolo's negligence. By paying ODHS's subrogation interest, DeBartolo is simply being held responsible for those injuries proximately resulting from its negligence. As discussed supra, any other resolution of this matter operates as an unjust and illogical resolution when viewed in light of the evidence and the jury's verdict. The foregoing discussion illustrates that the trial court's decision was supported by competent and credible evidence.
Accordingly, for the reasons stated herein, DeBartolo's sole assignment of error is without merit.
For the aforementioned reasons, the judgment of the trial court is hereby affirmed in part and reversed in part, and this court hereby enters judgment in favor of Linda S. Raniolo in the additional amount of $3,000.00 against the Edward J. DeBartolo Company and Thomas Poynter pursuant to its authority under App.R.12(C).
Cox, J., concurs, and Vukovich, J., concurs
[1] Poynter and DeBartolo were represented jointly by Attorney Brad Gessner of Harrington, Hoppe Mitchell, Ltd. on appeal. For the sake of clarity, DeBartolo will also be used throughout as to include and refer to those arguments set forth by Poynter as well as DeBartolo.